The next case for argument is York County v. HP, Inc. Good morning, Your Honors. Steve Hubachek, Robin Skeller, on behalf of the plaintiffs' appellants. Your Honors, the district court ruled on, at most, two issues in this case. First, it dismissed based upon the statute of limitations. That ruling was clearly wrong because the court did not follow the analysis required by Merck. Under Merck, it's a discovery statute, and the statute begins to run when the plaintiff either can plead a viable securities claim or, in the exercise of due diligence, would be able to file a securities claim. It was the defendant's burden to prove either of those facts. They didn't do either. The district court didn't find either. So the statute of limitations ruling is error. The second issue that the district court addressed, in a footnote, and if that's a holding, it basically said that for the last two-thirds of the class period, the statements made during 2016, that lead plaintiff did not have standing to urge those claims on behalf of the class, but the district court never questioned that lead plaintiff had standing to assert the claims prior to its sales of its stocks. In other words, the sales, the statements that were made in November of 2015. That error, excuse me, that ruling was also error under this court's decisions in Malendras and Corolla. Those cases hold that once a lead plaintiff shows standing to raise a claim, the standing inquiry is done, and whether the lead plaintiff can represent the class in other claims is an issue for Rule 23 and class certification. So again... So does Maryland Electric have standing to raise all of the claims that are raised in the complaint? Well, Maryland, I mean, they have standing to raise the claims based upon the statements... Up until their sale, which is December. Correct. And you have alleged claims after December. That's correct. Does Maryland have standing to pursue those claims? Maryland does not have standing to pursue those claims, but... Do you have anybody else in the case who does? There's nobody else who's alleged in the case who has those claims. Isn't that your obligation to come forward with somebody? In other words, I'm not disputing that Maryland Electric may be an appropriate lead plaintiff and perhaps will be a good class representative. Don't know that. That hasn't been determined by the district court. But at least as a lead plaintiff, you're fine. But at some point, and maybe really, really soon, you have to find somebody who has standing to raise the claims after Maryland Electric sold its stock. Well, Your Honor, the ruling from the district court, again, if it is a ruling, was that we didn't have standing to pursue the claims basically in 2016. But Melendrez and Carolla both say that that's not a standing issue once the lead plaintiff demonstrates standing to pursue some claims. Right. That's right. You are an appropriate lead plaintiff. I don't think this case should be dismissed for standing. But unless you come forward with somebody who's holding stock after Maryland Electric sold its stock, I don't see how you can bring those claims. Well, that wasn't the basis of the district court's ruling. I understand that it wasn't. But I'm concerned here for a couple of different reasons. Do you have somebody else who does? Did York? No. York has sold in December of 2015 as well. So they're basically, they have standing to urge the November 5 statements. And then we have class standing in order to pursue the remaining claims on behalf of the absent class members. That's basically what Melendrez and Carolla say. I don't think that's what Melendrez and Carolla say, frankly. I mean, for example, if Maryland has standing to allege, you know, this false, up to November 24th, they can allege like an ADA claim, can't they? Against HP? An ADA claim. No. No, because you need to have someone that has standing that's been injured by the actual claim, right? Right. And they have standing. It's jurisdiction 101. They have standing for the November statements. Correct. But who is going to argue past November? Well, we will represent the absent class members. And this is basically what happened in Carolla. In Carolla, that was an ADA case. Maybe that's where the hypo came from. But anyway, in Carolla, it was an ADA case. There were multiple facilities that were challenged, but Carolla actually only went to a few of them. And yet, this court approved a trial in which the claims as to the other facilities, because that case involved libraries, swimming pools, parks, public rights of way. And Carolla, it was undisputed, did not visit all of them that were at issue in the trial. So in this case, similar to Carolla, Maryland Electric will have the ability to pursue the And those claims will be, I mean, they will be able to pursue those claims if, in fact, ultimately down the road, they successfully get a class certification motion under Rule 23. That's what happened in Carolla. So let me ask you this. If we thought the statute of limitations ruling was incorrect, you go back to the district court. Are you home free to pursue the class action without identifying anybody who actually has standing to raise claims after December of 2015? I think so under Carolla, yes, Your Honor. And we are able to pursue, and people will have to be able to make their claims through a claims process to establish that they actually were injured and so on and so forth. I mean, that's the way that it would happen on the back end of the case. But yeah, I think, and I think that's what Carolla says and what Melendrez says. So if we disagreed with that, and we, you know, reversed on the statute of limitations, would, and you can't find another named plaintiff, could the class period just be limited to November 24th when you last purchased stock? It's conceivable that that could happen. But, again, I think that Melendrez and Carolla both are binding on this Court. And I just don't think that's the same fact that Melendrez, I think, at least that named plaintiff, there was a named plaintiff that had been injured by all facets during the class period. Actually, I respectfully disagree. What happened in Melendrez was that there were some people that were stopped. There were these saturation patrols, and that was, I think, the majority of the cases. But there was also these stops that were made pursuant to traffic patrols. The two plaintiffs who had the ability to pursue those claims were dismissed. They found that there was no violation there. And so what this Court ultimately confronted in Melendrez was can the remaining named plaintiff pursue the traffic stops? And the ruling was yes, they could, and that that was a Rule 23 issue. And basically, Carolla came on in the heels of Melendrez and basically reached the same conclusion as to ADA claims that were from facilities that Mr. Carolla, or Ms. Carolla, I don't know which one it is, that Carolla never actually visited. So I think in both of those instances, the lead plaintiffs were able to do exactly what we're contending Maryland Electric or even York County could do today. Which is to represent unnamed people. That's correct, Your Honor. Who would have claims that the named — I have no problem with Maryland Electric serving as a lead plaintiff or as a class representative, in theory. I have no problem with that. Even though they don't — they can't represent — they don't have any claims that go through the entire period. But it seems to me that you may have to identify somebody who's got — who has standing to raise those claims. Well, I think that Melendrez and Carolla answered that question and perhaps respectfully disagree with Your Honor's concern. But that's not the issue that we're here on today. That wasn't a rule down below. That wasn't the issue that was actually raised. The question was a flat — you know, you have no standing, so therefore you can't pursue those claims. And Melendrez and Carolla say the opposite. So I think — Your point is basically that it should be addressed in a motion to dismiss. It should be addressed in a class certification issue down the road. Correct, Your Honor. I understand. Assuming we agree with your interpretation of Melendrez, how does it survive TransUnion v. Ramirez, which, you know, said standing is not dispensed in gross. Plaintiffs must demonstrate standing for each claim they press and for each form of release that they seek. I don't recall that case being addressed in the — It's a Supreme Court case from 2021, so — but anyway. Right. And that was a class action case. Well, ultimately, the only people that would be able to make claims with respect to the statements that are made in 2016 are going to be people that have to come forward and go through whatever process, you know, the — ultimately on the back end of this process would require. They'd have to demonstrate that they purchased in those particular events. I mean, that's basically the whole proceeding that goes on at the back end of a class action. People make claims. They have to demonstrate that they have the ability to make those claims. They'll have to demonstrate that they bought the stock and when they sold and so on and so forth. So there's no — there's no chance of people actually having benefits distributed to them where they did, in fact, you know, didn't qualify for them or didn't otherwise have standing to pursue those claims. Now, with respect to the Supreme Court case that Your Honor has mentioned, the question here is there is standing as to the November statements. And unless, you know, Melendrez and Carolla are overruled, and it's pretty much the same rule in the Second Circuit as well under the NICA decision that we also cited in the briefs, that's the current state of the law in this circuit. Now, Your Honors, I'm getting near the end of my time, but I would like to just briefly comment on the statute of repose issue which the defendants has raised. Before you get to that, can you get to the statute of limitations question? Yes. So the one question I have is, in Merck, you know, there's a discovery rule, but what level does that reach? Like, is it enough to — you have to reach, like, the 12b-6 stage of — do you get my question? What standard — Yes. Because there was definitely some evidence of SANTOR prior to the SEC report, but I tend to agree with you that SEC kind of hammered it, but — Your Honor, the 12b-6 standard is the standard. MBIA, the case from the Second Circuit, basically lays that out. They've reaffirmed that later on in Demura, and that analysis has, you know, played well in other circuits. The Eighth Circuit, the Third Circuit, the Eleventh Circuit have all, you know, gone on record as agreeing with MBIA's analysis. And it makes sense in terms of Merck's opinion because Merck talked about the pleading requirements for SANTOR because what Merck was focused on was the fact that SANTOR was one of the alleged, and the Merck opinion specifically went into the pleading requirements imposed by the PSLRA for SANTOR. So I think that MBIA got it right. The Eighth, Eleventh, and Third Circuit think they got it right. I think that's a standard that this Court should adopt. And then with respect to the — just briefly with respect to the statute of repose issue, the Eighth Circuit in Medtronic and the Second Circuit in MBIA both had the same situation where there was a district court that ruled erroneously on the statute of limitations but didn't reach the statute of repose. Both of those courts said, we're not going to deal with the repose on the first time on appeal. That's very similar to what this Court has done in Securius cases in Miller and in Koja. But if Your Honors, you know, choose to address it, I think this is a situation where Maryland just basically assumed the mantle of County of York and pursued the same claim. It's the same number, the same caption, the same claims, the same court, the same proposed class, all the same thing. I think as the district court in — I think it's Finex-Lenentech said, it's basically the same claims, just restated. So I don't think there's any question that this is the same action, completely different case from CalPERS where you had an opt-out filing an individual claim in a different court after the repose had run. Your Honors, if I may reserve the remainder of my time, I appreciate it. Thank you, Counsel. Thank you. Thank you, Your Honors. Brian Lutz for the defendants. Let me start with picking up on some of the questions that Your Honor — I'm sorry, are you splitting your time? I just noticed. Or are you going to take the whole 15 minutes? I may reserve a minute or so for my colleague here, Mr. Schatz. I think we'll see how it goes. Let me just start and address some of the questions that Your Honors posed to my colleague here, starting with the standing in the statute of repose, which I think those two go hand in hand. You focused on whether Maryland Electrical has standing to bring claims here. And I would concede that if the statute of repose was not an issue here, I would concede that the standing issue — we don't have a standing argument that Maryland Electrical does have standing for the November — certain of the November statements. However, the statute of repose is critically important here. Maryland filed its complaint in April of 2021. The statute of repose is ironclad. It is absolute. Kelpers makes that clear. The Second Circuit cases that Kelpers Court was adopting and following in its decision make this absolutely clear. Judge Ginsburg in the China Agritech makes it clear. Statute of repose, five years, is ironclad, absolute, cannot be told. So five years before — there's a five-year period before Maryland Electrical filed its complaint in April of 2021, and it has to file within that repose period. It did not — My problem with that argument is the York filing. That does complicate things. It does not, respectfully, Your Honor. I mean, if you look at Kelpers, it is absolutely clear that it does not. If you look at the Second Circuit cases that it's adopting, it says it's adopting the rule of the Second Circuit. It's absolutely clear it is not. Those are two separate things. It does not matter that it's in the same action. The Kelpers Court addressed this very issue in its decision when reacting to the secondary argument that was posed by the plaintiff there, which, by the way, was represented by the same plaintiff's counsel in this case. This is the majority opinion from Justice Kennedy when he addresses the issue of the argument from the plaintiff in that case, saying, my action is essentially the same, is brought in, is included in the original plaintiff's — the class plaintiff's complaint. I should be able to take advantage of that because my individual claim as a putative class member is brought in that claim. The Court said, no, you can't do that. And it looked at the American Pipe decision. This is the Kelpers Court discussing the American Pipe decision. It says — it says in American Pipe, of course, the issue was whether the filing of the class action complaint told the statute of limitations for claims that could be asserted by putative class members. The courts in that case said, no, the statute of limitations is equitably told for claimants, for individual claimants after class cert was denied. But because — and this is the important part — because the original class complaint had been filed 11 days before the statute of limitations expired, any individuals who wanted to come in and file their own claims only had 11 days to do it. That's the 11 days after a class certification was denied. They had 11 days to intervene and file their own claims. In other words, the original complaint did not bring in or include the putative class member's claims. These are separate claims. So — so let me make sure I'm clear. Sure. So under your theory of the statute of oppose, your county's complaint is — is timely? No. We don't concede that. We have an argument as to why it's not, as to the particular statements. Their statement — their claim is only timely based — according to them, based on a November 5th statement. As we've argued below and as we argued up here, that's not — that's not accurate. The November 5th statement was actually — the statement that they claimed was — But that all goes to the merits, right? No, no, no. It goes to your county. I mean, your county is not a proper plaintiff in this appeal at all. But the specific question — to answer your specific question, no, we don't concede that your county filed a timely complaint. But my point is, even if your county had filed a timely complaint, there's — under CalPERS, under the Second Circuit decisions, other decisions, Maryland does not get to take advantage of that — By filing its own complaint, would Maryland have been included within the class action in your county's complaint? Yes. An individual member with individual claims. And could — and could a district court decide that Maryland Electric would be a better class representative or a better — a better lead plaintiff than your county? Certainly. That's something — I don't — I don't understand what the argument, then, is about if your county's — I mean, I'm — It doesn't — what the — what the argument is as to why Maryland Electrical is not entitled to take advantage of the class of the — Right. Well, that's because what's — what the court said in CalPERS, it's what — the Second issue. This is the law of the Second Circuit and has been since 2013, and it's what was adopted in CalPERS. Just to pick up on the point from Justice Kennedy in his reference to the American Pipe decision, he said, you don't get to start afresh. If you want to bring a claim, notwithstanding a timely filed class complaint, if you are an individual who wants to come in and bring that claim, you don't get to start afresh. It's not forever. You only have the 11 days that were left from the — when the class action complaint was in the repose period. It wasn't — you don't have all the time. You have those 11 days. Why? Because your claim is not brought in, is not included in the class complaint. You have to look afresh. It said — here's how Justice Kennedy described it. He said, if the filing from the CalPERS decision, if the filing of the class action brought or included individual actions, it would have sufficed for the American Pipe Court to note the date on which the class action was filed and deem all subsequent individual actions proper, regardless of when filed. But that's not what the American Pipe Court did. I'm sorry, counsel, and this may just be a really stupid question, but remind me what Maryland Electric's suit filed in April, how that was different from York's. It wasn't different, per se. It was filing at this point — of course, there's no class action, there's no certified class. It is asserting claims on — its claims on behalf of a putative class. But it doesn't matter. Again, this is what CalPERS says. It doesn't matter that you're filing the identical claims. You have to look at the timeliness of your claims individually when you're filing them, no matter if they're asserted as a class claim. If the claims aren't different, and Maryland is within York's original filing, and Maryland could be — the district court could decide at a later period that Maryland was a better representative than York for whatever reason, what's the issue? Well, this is exactly the issue that was presented in the IndyMac decision in the Second Circuit and in the DeKalb decision in the Second Circuit. The rule of the Second Circuit that CalPERS says it was adopting that's been in place since 2013. In those cases, in IndyMac, the court said an intervener's complaint has to come within the statute of repose, even if there's a timely filed class action complaint. In that case, it was the original plaintiff, the York County in this case, so to speak, who filed the original complaint. Another plaintiff, lead plaintiff, came in, the Maryland Electricals in this circumstance, came in and was appointed as the lead plaintiff. Then later — So the district court chose who the lead plaintiff was? Of course. Yes. In both cases. Doesn't that make it a little different? Then if the district court — it's the district court's fault, you know, for choosing Maryland over York, and York was within the statute of repose, shouldn't it — York didn't even apply to be lead plaintiff. Oh, it didn't — No. It ceded. There was no — there was no competition here. There was no competition. York hasn't done anything other than file the complaint. They're not even a party to this case anymore. Maryland Electrical is. But going back to IndyMac, it's the identical situation here. The York County in that case files the original complaint, and that one, I don't think there was even an argument that it wasn't within the repose period. Another plaintiff, the Maryland Electrical here is appointed, York County drops out, they litigate the case, then York County tries to come in and assert claims, the claims that it had asserted originally, and says, okay, we should be fine. The court says, no, you're barred by the repose period. It is exactly the situation here. You've got to look at the individual claims whenever they're asserted, even if they're the same type of claim, even if they're the same putative class claims. DeKalb, and what does the court say in IndyMac? It says you could have preserved your claim. All you had to do was file a motion to intervene. You could have been named as a co-lead plaintiff. You had to take some action to preserve your claim. It's easy to do, and you didn't do it. Statute of repose is absolute, you're time barred. Same thing in DeKalb. Just my question, why shouldn't we just take that question back to the district court? Because it's pretty complicated. I mean, you might be right, but it's a lot of moving parts going on, new areas of law. Is there any reason why we need to do it first? I mean, it is a pure issue of law. It was presented below. I agree, of course, that the district court didn't take that up. It took it in the standing. It really is the standing and the statute of repose go together. The district court didn't also reference repose in that footnote, but logically, that's what the district court was referring to when it said, standing is still an issue here. The issue really is there's no non-time barred, no statute of repose barred claim for which this plaintiff has standing. That's what that meant. So respectfully, it's been presented below. It's a pure issue of law. There's no disputed facts about when the complaint was filed, the trading history. It's undisputed facts. It's a pure issue of law. It's supported by the record. We would urge you to take it up now. I just want one more point on city, I'm sorry, on the DeKalb County case. Again, a Second Circuit case, squarely on point here. Two lead plaintiffs, one with a timely file, the other not timely file complaint, appointed as co-lead plaintiffs. The original plaintiff drops out, leaving only the other co-lead plaintiff who did not present in the case within the repose period. The court said, that's too bad. You don't, you have to file your own claim. Even if it is the same claim, even if it's the same action, you have to judge each plaintiff's case on its own terms, even if it's in the same claim, even if it's the same action. The court said, rejected another argument that the plaintiffs make here, which is, well, a PSLRA lead plaintiff process serves to effectively toll the statute of repose. They said, absolutely not, absolutely not. This is, the Second Circuit says, nothing about the PSLRA's language even remotely suggests that the PSLRA was intended to toll the applicable statutes of repose for the 60 days during which a member of the purported class may file a lead plaintiff motion, and we've been unable to locate any authority that even arguably supports this notion. They have no response. They point to other parts of the decision that are not, that have no application here. They have no response to City of Pontiac. They have no response to IndyMEC. And they have no response to that part of the CalPERS case where the court is discussing American Pipe, which makes clear that it doesn't matter that it's the same. You have to judge each plaintiff's claim individually, even if it's asserted within a timely filed class action complaint.  Yeah, of course. One, do you agree that the Merck standard is the 12b6 standard, that once you survive, you have to be, have enough information or evidence to get, survive 12b6? What I think the Merck standard is, is what it says, which is, you have to look at the facts that give, that constitute the claim. What the plaintiffs say here is, and they ask you to adopt a standard that respectfully doesn't make sense. They say that it is the defendant's burden, it is the defendant's burden under their saying under Merck, to demonstrate at the pleadings phase that the plaintiffs have presented sufficient evidence in their complaint, allegations in their complaint, to survive a motion to dismiss. No matter how poorly pleaded, we have to admit that. We have to make that showing if we want to also tell you, hey, this thing, this case is barred by the statute of limitations. That's what the plaintiffs say. They say on page, excuse me, I'm sorry. They say on page 5 of their reply brief, Merck and its progeny thus required defendants to demonstrate that plaintiffs could plead a viable Section 10b claim. That is unfair. That is, that is an untenable position to put the defendants in. Well, what should the standard be? I mean, it does make some sense. If you required them to plead by the time they have some evidence, but then they wouldn't survive 12b-6, what's the point? My — what I think the standard is, is a version of what the district court did, which is to say, of course you have to look at the allegations in the complaint and look at them and take a common-sense approach as to whether those allegations that plaintiffs plead demonstrate on its face that the complaint is time-barred. You don't have to go through the laborious and time-consuming and, frankly, unfair process that they say is required of the defendants to demonstrate and admit that they've pled a proper claim, no matter how poorly pleaded. That is not the case. You just — the court took a common-sense approach. I think that's exactly what's required here. Of course, under Merck, you have to look at the allegations. You have to look at the elements of the claim and look at what do they allege as falsity allegations, what do they allege as scienter allegations, and see if, you know, on their face, if the allegations that they make demonstrate that the claim is time-barred or discoverable before the limitations period. Just one comment on the SECs. When you look at — this is an argument that they make now. When you look at their actual allegations in the complaint, they barely — in the scienter section of the complaint, there's 49 paragraphs starting at a paragraph 150. They barely mention the SEC settlement. It's barely mentioned in those allegations. I'm sure I agree. I mean, the one thing that's clear — I mean, as I read the SEC order, that's the first time the Tier 2 allegation comes public, becomes public? Is that — It is. So what the SEC said in the settlement is that HP, when discussing its channel inventory, was only referring to the inventory levels of its Tier 1 partners. Right. Those are the distributors with whom HP had a relationship that they actually sold the products. What the SEC said is it was misleading not to also disclose your estimates for Tier 2, which is what the — And that was the first time it was ever made public, correct? Well, what does the SEC say, though, actually, about those allegations as it relates to scienter? The key question here is scienter. What do they allege, and how does that give rise to scienter? You would think that if that — if there was allegations in the SEC settlement that supported scienter as to that issue, that there would be allegations that individual defendants in this case knew that it was misleading to make those allegations. There's none of that. But — I would respectfully disagree. I think, you know, if — they suggest that Les Jack, whoever — was very close — was intimately aware of those — that data, and if the SEC decides that that was misleading not to present that data, then if you're closely aware, then that does give some inference of scienter there. I respectfully disagree. The SEC settlement says nothing of the sort. What it says in two paragraphs — and this is critical — it says that SEC's HP senior officers did not know of the allegedly improper sales practices, that plaintiff's claim is what made those statements misleading. They did not know until quarters after the alleged conduct had taken place. And even more importantly, the SEC itself alleges — these are the SEC's — they allege that HP's internal controls didn't provide information about these sales practices to the HP executives responsible for making public statements. Respectfully, this is why those negate any inference of scienter. That's why the plaintiffs don't even acknowledge those critical allegations in their briefing. And it's why you see the phrase that they make — that they repeat over and over in their briefing, that the SEC settlement disclosed that, quote, defendants consciously excluded Tier 2. That's the words that they use. That is a fabrication. That does not exist at all in the SEC settlement. To be fair to them, I think the SEC makes light that they omitted Tier 2, and then there's an allegation that one of the individual defendants was intimately aware of that data. And so if you know that data really well, there is an inference of scienter there. Respectfully, Your Honor, it does not say anything about any individual defendant. It doesn't say anything about Ms. Westjack. I understand that. I'm coupling the allegations of the complaint with the SEC and putting them together, and then does that raise an inference of scienter? The whole issue here, Your Honor, is whether the SEC settlement is, for statute of limitations purposes, is whether the SEC settlement is some kind of game changer for scienter. You've got to look at what's alleged in that. The allegations themselves, the plaintiffs barely mention in their scienter section. And the reason why they do, the reason why they didn't focus on the SEC settlement for scienter purposes is because it does not support. There is nothing in that settlement that supports an inference of scienter. If anything, the allegations that I point to, which are specifically the only ones that are related to any of the senior officers here, say that they did not know of the challenge sales practices at the time that they made the alleged misstatements and when the internal controls did not provide that information to them when making public statements. I'm sorry. I can't. Can I indulge you for one minute? One minute. Go ahead. Stephen Shess, Your Honor. I want to address the issue of statute of repose. Maryland's claim, class claims, ran for any statement made prior to May 21. The York complaint at most preserved individual claims. It did not preserve class claims. And what it had to do to preserve class claims is to seek being lead counsel. And if you have any question about this, I refer the court to the China Agritech v. Resch case. In that case, both Justice Ginsburg on page 10 of her decision for eight of the justices made that argument and specifically said that what the PSLRA encourages is to file class claims immediately so the court can decide the issue. Even Justice Sotomayor, and I think that's page seven of her, we'll call it a dissenting concurrence. She didn't like the decision but under the facts. You're over your minute. So if you want to wrap up. We refer the court to the China Agritech case and the result of that is that York did not preserve Maryland's ability to bring a class claim. Thank you. Thank you, counsel. And we'll give you some extra time since we gave them a lot of extra time. Thank you, Your Honors. First, and I apologize that this isn't an exact quote, but my friend said it does not matter that it's the same action. And that's actually a concession that the proposed claim doesn't work because that's what the statute is worded. It talks about when an action is brought. And if it's the same action, then it's not two actions that are being brought and so, therefore, the statute of proposed has no application. York did timely file. The defendants have an argument that there's some insufficiency in the allegations not ruled on by the district court below, but they did timely file. And it's also interesting to note that although they claim that this is completely an issue of law, the York complaint was never dismissed. So let's say that someone says that, in fact, the Maryland electric complaint is barred by the statute of proposed. I don't think it is, and we already explained why. But Maryland's complaint is still out there. So there's no reason that that wouldn't proceed. And the district court, because it never addressed proposed, never had to confront that issue as well. Can I ask you a question on that? So their argument is essentially that statute of proposed is plaintiff by plaintiff, not action by action. And if that's correct, then it does seem like York and Maryland are different plaintiffs, and so we should apply different proposed periods. I don't think that's the case. I think the way the statute is worded, it talks about an action. And this is the same action. And what happened here is that Maryland made a motion in the York County case, in that same action, to serve as lead plaintiff. So it basically assumed the mantle of York County. So it is the same action. The language itself, Your Honor, the statute actually talks about no action shall be maintained. I'm sorry. I'm reading the wrong one. A private right of action involving fraud may be brought. And then it says two years after for the statute of limitations and five years after such violation. So it does refer to action, not to plaintiff. And these are two plaintiffs that are in the same case. With respect to the Second Circuit cases that counsel was talking about, none of those cases are like this case. They're cases where the original lead plaintiff was dismissed, and then someone tried to come in after those cases were dismissed and then try to revive the case. In fact, that's what IndyMac says. You can't revive a case along those lines. And the DeKalb case that defendants rely on heavily actually has seemingly been overruled by subsequent Second Circuit cases. The Liquidation Fund case and the Klein case basically completely disapprove of its analysis. So those cases are neither good authority nor do they cover the facts here. Now, Your Honors, with respect to the Cyanar issues, Cyanar wasn't ruled upon below. I could talk about those. I don't know how much patience Your Honors have. But the bottom line is that it doesn't matter that the SEC didn't find Cyanar. Verifone from this Court and Judge Bennett's Under Armour case say the same thing. It doesn't matter that the SEC didn't find it. And the fact that they found that there was no knowledge doesn't matter either because recklessness is sufficient. I guess my question then, what was necessary? What was in the SEC order that was necessary for you to then file your claim? What was necessary for us to do? What information that was gleaned from the SEC report that then made it necessary or, I guess, made your claim right at that point? I think, Your Honor, it hit on it before with the Tier 2 information. Not only did they exclude the Tier 2 stuff and not tell anybody about it, but they were also maintaining an actual – they were analyzing the Tier 2 inventory throughout this entire process. This began, this scheme to use gray marketing and pull in sales, began in the beginning of November 2015 and proceeded basically for a year by the time November rolled around. And they were doing quarterly analyses to monitor what the Tier 2 inventory was. So they clearly would have been aware of the fact that the Tier 2 inventory was growing and growing and growing and growing and then even accelerated further on as they got later into 2015. Okay, so how does the fact of the Tier 2 omission lead to a scienter? It leads to scienter because it shows that they knew that there was a significant problem with the Tier 2 inventory because what they were telling the public related only to the Tier 1 inventory. So that's misleading and it's recklessly misleading the investing public. And just one last comment with respect to the Merck analysis. Councils thinks that it's unfair to require them to show what the Supreme Court says they have to show in order for the statute to begin to run. But NBIA and four other circuit cases have all agreed that's the test. And if I could just quickly read just a little bit from the Nomura case from the Second Circuit. It said defendants deduced no evidence of how long it would take a reasonably diligent investor in plaintiff's position to investigate plaintiff's claims such that they could adequately plead them. Well, that's exactly the test that we're advocating today and that's Nomura at 873 Fed Third at 122. And then finally that last argument that was made with respect to Justice Ginsburg's. I don't think that argument was in the briefs. I think it's waived at this point. Thank you, Counsel. Thank you, Your Honor. The case is submitted and we are adjourned until tomorrow. All rise.
judges: BYBEE, BUMATAY, Bennett